IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION



| | | |
|---|---|---|
| IN RE RELIANT SECURITIES LITIGATION | ) ) ) ) | CIVIL ACTION NO. H-02-1810 (CONSOLIDATED) Judge Ewing Werlein, Jr. |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | ) ) ) ) ) | |

**LEAD PLAINTIFFS' RESPONSE TO RELIANT DEFENDANTS'
SUR-REPLY TO LEAD PLAINTIFFS' REPLY TO DEFENDANTS'
OPPOSITION AND IN FURTHER SUPPORT OF LEAD
<u>PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>**

# TABLE OF CONTENTS

Page

I. SUMMARY OF ARGUMENT ........................................................................................1

II. ARGUMENT ....................................................................................................................1

    A. Defendants' Sur-Reply Is Unauthorized And Inappropriate ...............................1

    B. Defendants' Phantom Share Argument Is Unsupportable ...................................3

    C. There Has Been No Implied Repeal Of Section 11 As A Certifiable
       Class Claim ............................................................................................................4

    D. Defendants' Authorities Do Not Support A Finding That Absent
       Class Member Purchasers Of Reliant Resources Securities Lack Standing ........6

    E. No Court Has Adopted Defendants' Argument And Every Court
       To Have Touched Upon The Issue Has Rejected It ..............................................8

    F. John Parsons' Declaration Cannot Survive A *Daubert* Challenge .......................9

    G. Defendants Have Not Disputed This Court's Ability To Certify A Class Of
       Purchasers In Reliant Resources' April 30, 2001 IPO Or Through May 14, 2001
       With MPERS As Its Class Representative .........................................................10

III. CONCLUSION ................................................................................................................10

CERTIFICATE OF SERVICE .....................................................................................................12

I.  **SUMMARY OF ARGUMENT**

Defendants have apparently realized, after reviewing Lead Plaintiffs' Reply in Support of Class Certification ("Reply"), that their one challenge to class certification in this case – the argument that a purported "large" volume of short-sales would cause individual issues of standing to predominate over common issues – is factually incorrect, logically infirm, contrary to the statutory framework of our securities laws, and not supported by any admissible evidence. Moreover, as demonstrated in Plaintiffs' Reply, even if the Court were to fully credit Defendants' novel and radical arguments, Defendants' cannot and have not challenged the certification of those class members who purchased their Reliant Resources shares in the April 30, 2001 IPO or up to May 15, 2001, or the ability and propriety of the Louisiana Municipal Police Employees' Retirement System ("MPERS") to act as class representative. Therefore, although it is not provided for in this Court's Docket Control Orders and improperly includes no new arguments or evidence, Defendants have unilaterally filed a "sur-reply" for no other reason than as a strategic tactic to improperly have the last word on this matter. If the Court is inclined to consider Defendants' sur-reply, Plaintiffs submit that, as the movant on class certification, Plaintiffs' response thereto as outlined below should also be considered by the Court.

II.  **ARGUMENT**

**A. Defendants' Sur-Reply Is Unauthorized And Inappropriate**

A Docket Control Order was entered in this case almost two years ago and was followed by an Amended Docket Control Order ("Amended Order"), negotiated and agreed to by the parties and entered by this Court on June 16, 2004. The Amended Order addressed discovery, motions, expert testimony and other matters regarding the trial of this case. As to class certification the Amended Order provided for a specific date on which Plaintiffs were to file their

1

motion for class certification, a specific date upon which Defendants "must either (a) advise the Court that they do not oppose Plaintiffs' motion for class certification; or (b) serve their opposition to Plaintiffs' motion for class certification," and a specific date by which Plaintiffs were to serve any reply to any opposition filed by Defendants. This Court's Docket Control Orders do not provide for the filing by Defendants of a sur-reply on class certification. Nevertheless, on September 20, 2004, Defendants filed a fifteen-page sur-reply, without seeking leave of Court.

Defendants' sur-reply is also inappropriate in that it offers "no new arguments or evidence." *Williams v. Aviall Services, Inc.*, 2003 U.S. App. LEXIS 18529 at *2 (5th Cir. Sept. 8, 2003). "The purpose for having a motion, response, and reply is to give the movant the final opportunity to be heard. A sur-reply is appropriate by the non-movant only when the movant raises new legal theories or attempts to present new evidence at the reply stage." *Racetrac Petroleum, Inc. v. J.J.'s Fast Stop, Inc.*, 2003 U.S. Dist. LEXIS 1569 at *59-60 (N.D. Tex. Feb. 3, 2003). Here, Defendants' sur-reply simply reiterates what Defendants said in their opposition to class certification.[1] Such attempts to simply continue the argument are not favored by this Court. *See Pipeliners, Inc. v. American Pipe and Plastics, Inc.*, 893 F. Supp. 704, 706 (S.D. Tex. 1995) ("[T]he Court notes to its great dismay that since the filing of the original Motion to Dismiss and Plaintiffs' Reply, additional Motions and Surreplies have found their way to this Court. ...This Court, which has one of the largest civil dockets in the country, finds this paper battle to be a preposterous waste of time. . . ."). As demonstrated below, in their sur-reply

---

[1] The only arguable "new evidence" to which Defendants could address their sur-reply are the affidavits which were filed with Plaintiffs' Reply and which merely responded to the arguments made and declaration filed by Defendants. However, Defendants do not address those affidavits in their sur-reply. They instead filed separate "objections" to those affidavits. Plaintiffs have responded separately to those objections.

Defendants fail to address the arguments made by Plaintiffs in their Reply. Instead, Defendants merely repeat the same arguments set forth in their opposition brief, which arguments Plaintiffs have demonstrated are simply illogical, if not dangerous, when applied to real life equity markets and which, not surprisingly, have not been adopted by any court.

## B. Defendants' Phantom Share Argument Is Unsupportable

Defendants' notion that "artificial", "unregistered" shares that are being bought and sold on America's securities exchanges every day simply makes no sense. Instead of addressing this argument head-on, Defendants resort to a tautology, arguing that shares sold by short-sellers are "artificial," but short-sellers cannot be charged with the sale of unregistered securities because these "artificial" shares are not securities at all. *See* Sur-reply n. 10 at 12.[2] Such reasoning is clearly circular and incorrect. Although Defendants boldly claim that these "artificial shares" do not fall within the meaning of "security," that term is defined by 15 U.S.C. § 77b (2004), which provides:

> The term "security" means any note, stock, treasury stock, security future, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral – trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a "security," or

---

[2] Recognizing the flaw in their logic, Defendants apparently have abandoned their argument and the argument of their expert Parsons that these artificial shares were not "registered with (or approved for sale by)" the Securities and Exchange Commission. *See* Reliant Defendants' Opposition to Plaintiffs' Motion for Class Certification ("Opposition") at 14, Declaration of John E. Parsons ("Parsons Decl.") at 3. Defendants now limit themselves to arguing that these artificial shares "were not authorized by the Reliant Resources Board of Directors or issued pursuant to Reliant Resources IPO." Sur-reply at 2.

>any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

Aside from the fact that a share sold by a short-seller is indeed commonly known as a "security," Defendants' own definition of "artificial share" puts it within the definition of "security" under the securities laws. *See* Opposition at 7 ("[b]ecause this beneficial interest [in the shares borrowed by a short-seller and sold to a subsequent purchaser] does not represent an actual ownership of stock, it is an 'artificial share.'").

Once it is recognized that Defendants' theoretical, artificial share is a "security," the rest of Defendants' argument falls away. Indeed, Defendants never answer the questions Lead Plaintiffs posed in their Reply. If they are not registered securities, what are short-sellers selling on America's securities exchanges every day, and why are they allowed to sell them with impunity? Who is accountable to the purchaser of shares from a short-seller for this (according to Defendants) obvious deception?

### C. There Has Been No Implied Repeal Of Section 11 As A Certifiable Class Claim

Defendants do not and cannot challenge Plaintiffs' argument that short selling was in fact contemplated when Congress enacted the securities laws. Sur-reply at 13. Nor do Defendants dispute Plaintiffs' argument that adoption of Defendants' far-fetched artificial shares/short-selling argument would wreck havoc with the statutory framework of the securities laws. Instead, based upon "changes beginning in 1973" due to "the implementation of the DTC system" which modernized the mechanics of stock trading, and esoteric economic theories that they seek to superimpose upon the nation's carefully crafted securities statutes, Defendants contend that the Section 11 remedy for false and misleading registration statements is no longer available. Sur-reply at 13. While Defendants suggest that plaintiffs are urging the Court to disregard Section

4

11's statutory standing requirements, their entire argument is based on the proposition that Section 11 was neutered, *sub silentio*, in 1973 by the Depository Trust Corporation's changes in trading mechanics. Nowhere do Defendants cite a statutory or jurisprudential basis for this proposition. Instead, they claim it now falls to Congress to undo the implied repeal of Section 11 so unwittingly and mischievously achieved by the DTC. Obviously, this Court must require a far more explicit and conclusive proof before it becomes the first court in the nation to dismantle the strictures of Section 11 due to the implied repeal unknowingly effected by the DTC in 1973.

Defendants ask this Court to ignore whatever chaotic implications their theories may bring to the securities markets. They urge this Court to ignore decades of securities class action jurisprudence and the "public policy ramifications" their unsound theories would have. Sur-reply at 13. Defendants attempt to lead this Court astray. The Supreme Court has acknowledged that "it is proper for a court to consider . . . policy considerations in construing terms in [the federal securities] acts." *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 695 n.7 (1985). Lead Plaintiffs submit and, courts that have touched upon the issue have agreed, that the proper and prudent course of action, and that which most clearly fits within the statutory framework of the federal securities laws, is to recognize that shares involved in short-sale transactions are real, do indeed fall within the ambit of the federal securities laws and that "any person" who acquires stock based on a false registration statement clearly has standing to pursue a cause of action under Section 11. *See* Lead Plaintiffs' Reply at 5-8, 14-15.[3]

---

[3] Notably, Defendants also do not dispute that there are a myriad of ways during the claims process that Defendants' concerns, real or imagined, may be addressed. Reply n.18 at 21, 23-24. However, they are not satisfied with these solutions. Based on economic theories that are dubious at best, they would rather have this Court take a radical departure from established law, undermine the remedial purposes of the Securities Act of 1933 and deprive thousands of their day in court.

### D. Defendants' Authorities Do Not Support A Finding That Absent Class Member Purchasers Of Reliant Resources Securities Lack Standing

In their desperate attempt to sever the Lead Plaintiff MPERS from the class of purchasers in and traceable to the initial public offering,[4] Defendants rely heavily on *Chevron U.S.A., Inc. v. Vermillion Parish School Board*, 215 F.R.D. 511 (W.D. La. 2003), 294 F.3d 716 (5th Cir. 2002), 364 F.3d 607 (5th Cir. 2004), 377 F.3d 459 (5th Cir. July 6, 2004). The case turns on its own particular facts, and cannot be stretched far enough to aid Defendants.

In *Chevron U.S.A.*, the District Court considered whether demand letters sent to the oil companies by the Vermillion Parish School Board and Marshall W. Guidry, referred to as the "Royal Owners," satisfied the written notice requirement of Article 137 of the Louisiana Mineral Code. In addition to notifying the oil companies of the Royalty Owners' underpayment of royalty claims, the demand letters demanded an accounting and payment on behalf of "all similarly situated royalty owners – all royalty and overriding royalty owners to whom you pay gas royalties in Louisiana." 294 F.3d at 718.

The oil companies brought a declaratory judgment action and requested the court to grant them summary judgment and deny class certification of the class claims. The District Court granted the motion to deny class certification, and the Court of Appeals affirmed.

The court's reasoning was clear. Under Article 137 no mineral lessor has the right to bring an action for the lessee's failure to pay royalties until the lessor has given written notice to the lessee. 215 F.R.D. at 515. Each individual lessor is required by law, as a condition precedent to filing litigation, to give the required written notice. "Because the putative class

---

[4] As noted previously, Defendants cannot and do not challenge the motion to certify the class of purchasers of Reliant Resources shares in the April 30, 2001 IPO and on the open market up until May 15, 2001.

members have no right of action under *Article 137* and applying *Rule 23* would create a substantive right in contravention of *Article 137*, the class certification must be denied." *Id.* at 516.

The Fifth Circuit noted the District Court's finding that "the notice required under *Article 137* must be individualized." 364 F.3d at 610. The reason for the requirement was clear, and critical.

> The notice to lessees required by Article 137 does not simply trigger a thirty day waiting period before suit may be filed. Rather it triggers an obligation on the lessee to investigate the complaint and respond in order to avoid substantial penalties, including lease cancellation. . . . The Royalty Owners concede that the class would number in the thousands. Permitting the demand to be made on a class basis, especially in a case such as this, would deprive the lessee of any real ability to respond within the relatively short time period allowed and upset the balance of rights between lessor and lessee carefully established by the Louisiana Legislature in Mineral Code Articles 137 and 141.

377 F.3d at 463.

Accordingly, the District Court and the Fifth Circuit appropriately denied class certification where none of the absent class members had standing to prosecute the claims the plaintiffs were purporting to raise on their behalf.[5] The courts were properly deferential to legislative authority, a course the Lead Plaintiffs similarly recommend in the disposition of this motion for class certification.

---

[5] Defendants include in their brief the *Chevron U.S.A.* District Court's citation to *Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir. 1981) ("Standing cannot be acquired through the backdoor of a class action.") However, that decision turned on the fact that the proposed class representative was not even a member of the class of persons discriminated against that he proposed to represent. Here, Defendants make no challenge to MPERS standing to represent the class.

7

### E. No Court Has Adopted Defendants' Argument And Every Court To Have Touched Upon The Issue Has Rejected It

Defendants seem to intentionally turn a blind eye to the holdings of cases cited by Plaintiffs from this jurisdiction and others that have clearly rejected their argument. For instance, the Fifth Circuit in *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 872-73 (5th Cir. 2003) indisputably held that *any person* who acquired shares issued pursuant to a false registration statement, whether in the initial public offering *or in the secondary market* can bring a Section 11 claim and specifically stated, "because there was only one offering of Azurix stock, all the plaintiffs' stock is traceable to the challenged registration statement." The only way Defendants could remotely contend that *Azurix* does not undermine their argument is if they assert that there was no short-selling in Azurix stock. This they do not do.[6] If, therefore, virtually all stock is shorted to some degree and if the law in this circuit clearly states that where, as here, there is only one offering "all the plaintiffs' stock is traceable to the challenged registration statement," *Azurix*, 332 F.3d at 873, then, any person who acquired that stock clearly has standing to bring a Section 11 claim whether they purchased the stock from a short-seller or not.

Even more significant is the decision in *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 296-97 (S.D.N.Y. 2003), where the court expressly rejected an argument that "voluminous short-selling" prevented a finding that common issues predominated and specifically held that those who bought WorldCom bonds from short-sellers were part of the class and could bring Section 11 claims. Defendants here argue exactly the opposite – that purported large amounts of short-selling in Reliant Resources stock prevents common issues from predominating and that

---

[6] Indeed, Defendants cannot make such an argument because their own "authorities" assert that less than one percent of stocks by value are never shorted and 16% of stocks, or less than one percent of the market by value, are "potentially impossible to short." Sur-reply at Exhibit A, p. 273.

8

purchasers from short-sellers cannot establish standing to bring Section 11 claims and cannot be part of the class.[7] It is simply disingenuous for Defendants to continue to argue that these cases do not, at the very least, implicitly reject their argument.

### F. John Parsons' Declaration Cannot Survive A *Daubert* Challenge

Although they ask this Court not to strike the declaration of John Parsons, Defendants also do not dispute Plaintiffs' assertions that the conclusions reached by Parsons have never gained acceptance by economists in the field, and are not the product of reliable principles and methods. Thus, because Parsons' method is not practiced by, at a minimum, "a recognized minority of scientists" in the field, his declaration should not be considered by this Court. *See Daubert v. Merril Dow Pharms, Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) (on *remand* from Supreme Court). More importantly, Defendants do not and cannot dispute the factual inaccuracies in Parsons' declaration, including his inaccurate characterization of the volume of short selling of Reliant Resources stock as "very significant."[8]

---

[7] Defendants are also unable to distinguish *Zlotnick v. Tie Communications*, 836 F.2d 818, 821 (3d Cir. 1988), where the court rejected defendants' argument that shares in effect sold and then bought by short-sellers could not be "owned" by them and deprived them of standing.

[8] Defendants try to salvage their position by arguing that as of May 13, 2002, more than one year after the IPO, short interest in Reliant Resources stock totaled "nearly five million shares." Sur-reply at 3. However, as noted in Plaintiffs' opposition, approximately 90% of those shares were held by institutional holders such as MPERS, who, like MPERS do require notice before their shares are lent to other investors. Reply at 20. Thus, because Parsons' declaration contains factual inaccuracies and omissions, because the Parsons' declaration is based upon a methodology that has not been accepted by economists in the field and because Parsons' declaration presents a methodology has not been accepted by any court, it should be disregarded by this Court.

### G. Defendants Have Not Disputed This Court's Ability To Certify A Class Of Purchasers In Reliant Resources' April 30, 2001 Ipo Or Through May 14, 2001 With MPERS As Its Class Representative

Notwithstanding many bites at the apple, Defendants cannot challenge the standing of MPERS. Defendants cannot dispute that their theories about "artificial" shares are inapplicable to MPERS and the claims of investors like MPERS who purchased in the Reliant Resources' April 30, 2001 IPO or at any point through May 14, 2001. Defendants cannot and have not challenged this portion of the proposed class. Therefore, Plaintiffs' proposition that this Court can and should, at a minimum, certify a class of all persons or entities who purchased common shares of Reliant Resources in the initial public offering on April 30, 2001, or through May 14, 2001, pursuant to the Reliant Resources Registration Statement and Prospectus dated April 30, 2001 and should certify MPERS as representative of that class, stands unchallenged.

## III. CONCLUSION

For the foregoing reasons and those set forth in Lead Plaintiffs' Reply in Further Support of Lead Plaintiffs' Motion for Class Certification, Lead Plaintiffs respectfully submit that Lead Plaintiffs' Motion for Class Certification should be granted.

Dated: October 13, 2004                    Respectfully submitted,

BERMAN DEVALERIO PEASE TABACCO
BURT & PUCILLO

_____
Michael J. Pucillo (Admitted *Pro Hac Vice*)
Florida Bar No. 261033
Wendy H. Zoberman (Admitted *Pro Hac Vice*)
Florida Bar No. 434670
Northbridge Centre, Suite 1701
515 North Flagler Drive
West Palm Beach, FL
Tel: 561/835-9400
Fax: 561/835-0322

E-mail: Lawfla@bermanesq.com

- and -

Peter A. Pease
Joseph Merschman
**BERMAN, DEVALERIO & PEASE
 TABACCO BURT & PUCILLO**
One Liberty Square, 8th Floor
Boston, MA  02109
Tel:  (617) 542-8300
Fax: (617) 542-1194

**LEAD PLAINTIFFS' COUNSEL**

NICKENS, KEETON, LAWLESS
    & FLACK, LLP
Jacks C.  Nickens
Attorney-in-Charge
Richard Keeton
600 Travis, Suite 7500
Houston, TX 77002
Tel: 713/571-9191
Fax: 713/571-9652

LIAISON COUNSEL

11

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record as shown on the attached service list on this October 13, 2004, via U.S. Mail.

_____
Michael J. Pucillo

## RELIANT SERVICE LIST

Charles G. King, Esq.
KING & PENNINGTON, LLP
1100 Louisiana Street, Suite 5055
Houston, TX 77002-5220

Paul Vizcarrondo, Jr. , Esq.
Dimitry Joffe, Esq.
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019-6150

Peter A. Pease, Esq.
BERMAN DeVALERIO PEASE
TABACCO BURT & PUCILLO
One Liberty Square
Boston, MA 02109

Roger J. LeBlanc, Esq.
LEBLANC & WADDELL LLC
Essen Centre, Suite 420
5353 Essen Lane
Baton Rouge, LA 70809

Michael P. Carroll, Esq.
Neal A. Potischman, Esq.
DAVIS POLK & WARDELL
450 Lexington Avenue
New York, NY 10017

Thomas C. Goldbold, Esq.
FULBRIGHT & JAWORSKI, LLP
1301 McKinney, Suite 5100
Houston, TX 77010-3095

James Edward Maloney, Esq.
Maria Wyckoff Boyce, Esq.
BAKER & BOTTS L.L.P.
910 Louisiana, Suite 3000
Houston, TX 77002

Lawrence H. Hunt, Jr., Esq.
SIDLEY AUSTIN BROWN & WOOD LLP
10 S. Dearborn
Chicago, IL 60603

Jacks C. Nickens, Esq.
Richard Keeton, Esq.
NICKENS, KEETON, LAWLESS,
 FARRELL & FLACK, LLP
600 Travis, Suite 7500
Houston, TX 77002

Eric J.R. Nichols, Esq.
BECK, REDDEN & SECREST
1221 McKinney Street, Suite 4500
Houston, TX 77010-2010

Kevin J. Harnisch, Esq.
FRIED, FRANK, HARRIS, SHRIVER
 & JACOBSON
1001 Pennsylvania Ave., N.W.
Suite 800
Washington, DC 20004-2505